KAREN P. HEWITT
United States Attorney
CHRISTINA M. McCALL
Assistant U.S. Attorney
California State Bar No. 234139
Federal Office Building
880 Front Street, Room 6293
San Diego, California  92101-8893
Telephone: (619) 557-6760

Attorneys for Plaintiff
United States of America

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>(2) BENITO DE JESUS EMMANUEL ZAMORA-ARIZAGA,<br><br>Defendant | Criminal Case No. 07CR3407-IEG<br><br>Date:  January 22, 2008<br>Time:  1:30 p.m.<br><br>**UNITED STATES' RESPONSE AND OPPOSITION TO DEFENDANT'S MOTIONS TO:**<br>**(1)    COMPEL DISCOVERY**<br>**(2)    SUPPRESS POST-MIRANDA STATEMENT;**<br><br>**(2)    SEVER THE DEFENDANTS' TRIALS;**<br><br>**TOGETHER WITH STATEMENT OF FACTS, MEMORANDUM OF POINTS AND AUTHORITIES** |

Plaintiff, the UNITED STATES OF AMERICA, by and through its counsel, Karen P. Hewitt, United States Attorney, and Christina McCall, Assistant United States Attorney, hereby files its Response and Opposition to Defendant's above-referenced motions. This Response and Opposition is based upon the files and records of the case together with the attached statement of facts and memorandum of points and authorities.

//

//

//

//

# I

## STATEMENT OF THE CASE

On December 19, 2007, a federal grand jury in the Southern District of California returned a two-count indictment against Defendant Evelyn Verenice Zamora-Arizaga ("Evelyn Zamora") and Defendant Benito De Jesus Emmanuel Zamora Arizaga ("Benito Zamora" or "Defendant"). The Indictment charges Evelyn Zamora and Benito Zamora with one count of bringing an illegal alien into the United States for financial gain, in violation of 8 U.S.C. § 1324(a)(2)(B)(ii), and one count of bringing in an illegal alien without presentation, in violation of 8 U.S.C. § 1324(a)(2)(B)(iii). After arraigning Defendant on December 20, 2007, the Court set a motion hearing date for January 22, 2008.

On January 8, 2008, Benito Zamora filed the above-captioned motions. The United States files the following response.

# II

## STATEMENT OF FACTS

**A.    The Offense Conduct**

Both defendants entered the Calexico West Port of Entry on December 10, 2007. Evelyn Zamora was the driver of a red Nissan Quest van and Benito Zamora was the only visible passenger. Both Zamoras indicated that they had nothing to declare and said they were going to Calexico. The primary inspector began a physical examination of the car and quickly noticed that the driver's side panel felt solid. Evelyn Zamora said the van belonged to a relative. The inspector referred the Zamoras and the van to secondary inspection and requested a search using a detector dog.

In the secondary inspection area, Officer Morse asked Evelyn Zamora if she was bringing anything from Mexico; Evelyn Zamora denied bringing anything and handed a valid border crossing card. Benito Zamora also presented a valid border crossing card. After reading the referral slip from the primary officer which noted an unusually dense driver's side panel, Officer Morse tapped the area and confirmed that it felt solid.

At that time, Officer Morse asked Officer Randolph to approach with a detector dog. Officer Morse told the Zamoras to get out of the car and wait in front during the canine inspection. As soon as the dog entered the van, both Zamoras turned their back to the vehicle. Shortly after the dog entered,

1 Officer Morse noticed that both Zamoras looked scared. Benito Zamora just stood still and began to
2 stare at Officer Morse. After the dog alerted, Officers Randolph and Morse went inside the van to
3 inspect the side wall. While inside, the officers saw what appeared to be a body. Officer Morse took
4 both Zamoras into the vehicle secondary office and returned to the van to assist in the removal of the
5 person. Eventually, after removing a seat and prying back the side panel, the officers freed Teresa
6 Jimenez-Martinez. Jimenez is a mexican citizen with no legal permission to enter or remain in the
7 United States. The compartment and Jimenez's removal were photographed.

8 **B.    The Defendants' Statements**

9       At approximately 1:39 p.m., Customs and Border Protection ("CBP") Officer Jose Bolanos
10 advised Evelyn Zamora of her Miranda rights in Spanish. Evelyn Zamora stated that she understood her
11 rights and did not wish to make a statement. Officer Bolanos did not question Evelyn Zamora about the
12 offense.

13      At approximately 2:05 p.m., Officer Bolanos advised Benito Zamora of his Miranda rights in
14 Spanish. Benito Zamora acknowledged each of his rights, signed a written waiver, and agreed to speak
15 with agents. Benito Zamora, throughout his 30-minute interview, claimed that he did not know about
16 the person hidden in the Zamoras' vehicle, prior to arriving at the port of entry. Benito Zamora said that
17 the day of his arrest was his day off of work at a carwash in Mexicali. His sister, Evelyn Zamora, called
18 Benito to invite him to shop at the Wal-Mart in Calexico, even though there is a Wal-Mart near the port
19 of entry in Mexicali. Benito Zamora said that Evelyn picked him up around 8:30 a.m. on the morning
20 of his arrest. Benito Zamora said that he lives by the Calexico East port of entry. When Officer Bolanos
21 asked Benito why the Zamoras drove all the way to the Calexico West port of entry from his house on
22 the far east side of Mexicali, Benito said that he did not question his sister. Benito said they waited in
23 the vehicle inspection line for about a half hour before reaching the primary inspection booth.

24      Benito Zamora said that the van belongs to Evelyn Zamora's mother-in-law. Benito stated that
25 he did not know that there was a female passenger in the vehicle's hidden compartment and said that he
26 had seen her when she was brought out of the compartment by the officers. The officers questioned how
27 Benito knew that the person in the compartment was a woman, since he was removed from the
28 secondary inspection area before the material witness was visible. Then, Benito Zamora said that he did

not see the female passenger and that he does not know why he said he had. The agents informed Benito Zamora that they did not believe his story and that continuing to tell lies causes problems. Benito Zamora started breathing heavily, put his head down, and said he did not want to continue with the interview. At that point, the interview stopped.

**D.    The Material Witness' Statements**

Lorenza Ines Ramirez Sanchez, the material witness, was interviewed in the Spanish language. In her interview, Ramirez admitted that she was born in Mexico and remains a citizen of Mexico. Ramirez said that she possessed no legal documents to enter or remain in the United States. Ramirez said she had attempted to use a counterfeit document to enter the Calexico West port of entry on December 7, 2007 and was allowed to withdraw her application for admission. Ramirez admitted that she has been living illegally in the United States for 19 years, using the name of Teresa Jimenez Martinez to conceal her true identity. Ramirez said she went to Mexico to visit her sick mother.

Ramirez said she made smuggling arrangements herself with an unknown man who approached her outside the port of entry in Mexicali. This man instructed Ramirez to meet her at a location where she was placed in the vehicle's compartment. Ramirez planned to pay 3800 dollars to be smuggled to Cathedral City. Ramirez said that the man told her to remain quiet so that "they"--presumably the officers at the port--would not discover her. Ramirez estimated that she spent a total of one hour inside the compartment. Ramirez said she was able to hear the voice of a female and a male from inside the compartment. Ramirez said that she did not know if she would be able to escape the compartment without assistance, in the event of an emergency.

**III**

**THE UNITED STATES' RESPONSE AND OPPOSITION TO DEFENDANT'S MOTIONS**

**A.    ORDER COMPELLING DISCOVERY IS UNNECESSARY**

No Order is Required; The United States is Complying With Discovery Obligations

The United States has produced 210 pages of discovery as of the filing of this response, as well as a digital video recording of the Zamoras' post-arrest Miranda warnings and the interview with the material witness. The United States has complied and will continue to comply with its discovery obligations under Brady v. Maryland, 373 U.S. 83 (1963), the Jenks Act (18 U.S.C. §3500), and Federal

Rule of Criminal Procedure 16. Because the United States has complied and will comply with its discovery obligations, an order to compel discovery is unwarranted and the request for such an order should be denied.

### 1--Defendant's Statements

The United States has already provided defense counsel with incident reports detailing Defendant's brief statements in primary, as well as a DVD recording of his post-arrest interview and the interviews of his sister and the material witness.

### 2--Reports

The government has already produced all the investigative reports that exist to date. There are no dispatch tapes connected to this port of entry case.

### 3--Prior Arrests/ Prior Bad Acts

Defendant is in the best position to know his own past encounters with law enforcement. The government has already provided him with a copy of his rap sheet, and will provide ample notice under Rule 404(b) or Rule 609 if it intends to use any prior acts evidence at trial.

### 4--Evidence Seized

The United States has complied and will continue to comply with Fed. R. Crim. P. 16(a)(1)(E) in allowing Defendant an opportunity, upon reasonable notice, to examine, inspect, and copy tangible objects that are within its possession, custody, or control, and that is either material to the preparation of Defendant's defense, or is intended for use by the United States as evidence during its case-in-chief at trial, or was obtained from or belongs to Defendant.

### 5--Reports

This request appears to duplicate the request in the second category of the discovery motion.

### 6--Personnel Files of Interviewing Agent

The United States will comply with United States v. Henthorn, 931 F.2d 29 (9th Cir. 1991) and request that all federal agencies involved in the criminal investigation and prosecution review the personnel files of the federal law enforcement inspectors, officers, and special agents whom the United States intends to call at trial and disclose information favorable to the defense that meets the appropriate standard of materiality. United States v. Booth, 309 F.3d 566, 574 (9th Cir. 2002)(citing United States

1  v. Jennings, 960 F.2d 1488, 1489 (9th Cir. 1992)).  If the materiality of incriminating information in the
2  personnel files is in doubt, the information will be submitted to the Court for an in camera inspection
3  and review.
4       Henthorn expressly provides that it is the "government," not the prosecutor, which must review
5  the personnel files.  Henthorn, 931 F.2d at 30- 31.  Accordingly, the United States will utilize its typical
6  practice for review of these files, which involves requesting designated representatives of the relevant
7  agencies to conduct the reviews.  The United States opposes the request for an order that the prosecutor
8  personally review the personnel files.
9       7--Co-Conspirator Statements
10      The United States is unaware of any statements made by any other uncharged co-conspirators
11 beyond those provided by the material witness at the time of her interview.
12      8--Recorded Statements
13      At the outset of this case, both defense attorneys received a DVD containing the interviews of
14 both Zamoras and the material witness.
15      9--Addresses of Government Witnesses
16      The United States will provide the names of the witnesses it intends to call at trial.  Defendant
17 has already received access to the names of potential witnesses through the discovery sent to his counsel.
18 The United States strongly objects to Defendant's request for witness addresses.  None of the cases cited
19 by Defendant, nor any rule of discovery, requires the United States to disclose witness addresses.  The
20 United States does not know of any individuals who were witnesses to Defendant's offenses except the
21 law enforcement agents who apprehended him, his sister and the material witnesses.  The names of these
22 individuals have already been provided to Defendant.
23      10--Evidence Seized
24      This request appears to duplicate category four.
25      11--Scientific Reports
26      In advance of trial, the Government will turn over any scientific reports and identify any experts
27 it intends to call at trial.
28      12--Promises to Witnesses

Notwithstanding the mysterious reference to income tax liability, there are no secret promises made to potential government witnesses in this case that have not been produced as discovery. Obviously, the material witness has been paroled into the country solely for the purpose of serving as a material witness, pursuant to 18 U.S.C. § 3144.

13--Advice About Contemplated Prosecution

This request is vague, confusing, and inapplicable to this case.

14--Bias of Witness Against Defendant

Under Brady, any information that a witness was biased against Defendant would be provided, but no such information exists at this time.

15/16--Conviction/Investigation of Government Witness

Under Brady and Henthorn any information that a witness was has a criminal conviction or is the target of an investigation that would call the witness' credibility into question would be provided, but no such information exists at this time.

17--Evidence Affecting Perception and Memory

The United States is unaware of any evidence that any government witness's physical ability to perceive, recollect or communicate or commitment to tell the truth is impaired.  The United States opposes the request for information that a witness has ever used narcotics or other controlled substance, or has ever been an alcoholic.  This request is overly broad and ignores the standard of materiality set forth in Brady for exculpatory or impeachment information.

18--Name and Address of Non-Witnesses

This request is over-broad and nonsensical.

19--Addresses of Witnesses

This request repeats number nine.

20--Name of Favorable Witnesses

Again, the names of all potential witnesses have been amply explained in the over 200 pages of discovery.

21--Grand Jury Transcripts

The agent who testified before the grand jury will not testify at trial.  This request is moot.

1    22--Jencks Material

The United States has or will comply with the disclosure requirements of the Jencks Act. For purposes of the Jencks Act, a "statement" is (1) a written statement made by the witness and signed or otherwise adopted or approved by him, (2) a substantially verbatim, contemporaneously recorded transcription of the witness's oral statement, or (3) a statement by the witness before a grand jury. 18 U.S.C. § 3500(e). Notes of an interview only constitute statements discoverable under the Jencks Act if the statements are adopted by the witness, as when the notes are read back to a witness to see whether or not the government agent correctly understood what the witness was saying. United States v. Boshell, 952 F.2d 1101, 1105 (9th Cir. 1991) (citing Goldberg v. United States, 425 U.S. 94, 98 (1976)). By the same token, rough notes by an agent "are not producible under the Jencks Act due to the incomplete nature of the notes." United States v. Cedano-Arellano, 332 F.3d 568, 571 (9th Cir. 2004).

**B.    UNITED STATES' MOTION FOR RECIPROCAL DISCOVERY**

Defendant has invoked Fed. R. Crim. P. 16(a) and the United States has voluntarily complied with the requirements of Rule 16(a). Therefore, provision 16(b) of that rule, requiring reciprocal discovery, is applicable. The United States hereby requests Defendant to permit the United States to inspect, copy, and photograph any and all books, papers, documents, photographs, tangible objects, or make copies of portions thereof, which are within the possession, custody or control of Defendant and which he intends to introduce as evidence in his case-in-chief at trial.

The United States further requests that it be permitted to inspect and copy or photograph any results or reports of physical or mental examinations and of scientific tests or experiments made in connection with this case, which are in the possession or control of Defendant, which he intends to introduce as evidence-in-chief at the trial or which were prepared by a witness whom Defendant intends to call as a witness. The United States also requests that the court make such orders as it deems necessary under Rule 16(d)(1) and (2) to insure that the United States receives the discovery to which it is entitled.

Federal Rule of Criminal Procedure 26.2 requires the production of prior statements of all witnesses, except Defendant. The time frame established by the rule requires the statement to be provided after the witness has testified, as in the Jencks Act. The United States hereby requests that

1 Defendant be ordered to supply all prior statements of defense witnesses by a reasonable date before trial
2 to be set by the court. This order should include any form these statements are memorialized in,
3 including but not limited to, tape recordings, handwritten or typed notes and/or reports.

**C.   THE STATEMENTS SHOULD NOT BE SUPPRESSED**

Defendant moves to suppress all statements made to government officials. Moreover, Defendant requests an evidentiary hearing to establish the facts and aid this Court in deciding this suppression motion.

### 1.   Defendant's Motion Should be Denied Without a Hearing

Contrary to Defendant's request, the Court should deny the motion to suppress without a hearing. Under Ninth Circuit precedent and Southern District Local Criminal Rule 47.1(g)(1), a defendant is entitled to an evidentiary hearing on a motion to suppress only when the defendant puts forth, in a declaration, sufficient facts to require a factual finding. United States v. Batiste, 868 F.2d 1089, 1098 (9th Cir. 1989) ("defendant, in his motion to suppress, failed to dispute any material fact in the government's proffer, . . . the district court was not required to hold an evidentiary hearing."). "A hearing will not be held on a defendant's pretrial motion to suppress merely because a defendant wants one. Rather, the defendant must demonstrate that a 'significant disputed factual issue exists such that a hearing is required.'" United States v. Howell, 231 F.3d 615, 621(9th Cir. 2000) (citations omitted).

Here, Defendant has failed to support his allegations with a declaration, in clear opposition to Local Rule 47.1(g). Defendant also fails to provide any factual support that a violation of Miranda occurred. This Court should deny Defendant's motion to suppress the statements he made to officials on the day of his arrest.

### 2.   The Miranda Warnings Effectively Conveyed Defendant's Rights

Defendant was informed of the Miranda rights in his native language. It is difficult to see what is wrong with the prophylactic protections phrased almost identically to those in the Miranda case itself. This warning is not defective. Defendant signed the "waiver of rights" form, and initialed each of the rights that were read to him, before speaking about the offense. Defendant furthermore indicated his understanding of such rights by invoking his right to remain silent during the interview, when agents informed them they did not believe his story. This invocation was respected; agents asked no further

questions.

### 3.    Defendant Knowingly, Voluntarily and Intelligently Waived His Rights

The case agent read the Miranda warnings to Defendant. Defendant signed the waiver form and wrote his initials next to each of the enumerated rights. The environment was free of physical intimidation; Defendant was not handcuffed during the interview, which took place in a well-lit room with two Spanish-speaking agents present and two unlocked doors. The length of detention preceding the post-arrest interview-- two and a half hours-- was well within the six hours deemed presumptively voluntary. All the evidence indicates that Defendant knowingly, voluntarily, and intelligently waived his rights. His statements should be admitted.

## D.    THE TRIALS SHOULD NOT BE SEVERED

Defendant Benito Zamora's motion for severance appears to be based on the possibility that his sister may offer exculpatory testimony for him if trials were separated, through some mysterious attempt to compel the government to grant her immunity in his trial, whereas she might possibly invoke her right to remain silent if the Zamora siblings were tried together. Defendant Benito Zamora has failed to attach any affidavits to support his claims, which are highly speculative and premature.

Federal Rule of Criminal Procedure 8(b) specifically provides for the joinder of defendants where they participated in the same series of acts or transactions constituting an offense or group of offenses.

> Two or more defendants may be charged in the same indictment or information if they are alleged to have participated in the same act or transaction or in the same series of acts or transactions constituting an offense of offenses. Such defendants may be charged in one or more counts together or separately and all of the defendants need not be charged in each count.

Fed.R.Crim.P. 8(b). In the instant case, as reflected by the statement of facts, these defendants are clearly linked by both the same Indictment and the same smuggling event, which the principles of judicial efficiency favor. See United States v. Tootick, 952 F.2d 1078, 1080 (9th Cir. 1991). Accordingly, the narrow question before the Court is whether the otherwise permissible joinder should be overruled by the Court.

The granting or denial of a motion for severance is governed by Federal Rule of Criminal Procedure 14. Rule 14 provides in pertinent part:

> If it appears that a defendant or the Government is prejudiced by a joinder of offenses or of defendants in an indictment or information or by such joinder for trial together, the court many

1 order an election or separate trials of counts grant a severance of defendants or provide whatever other relief justice requires.
2 Fed.R.Crim.P. 14.

In other words, Rule 14 provides that the trials may be severed when it is apparent that a joint trial would cause prejudice. The Supreme Court has held that "when defendants have been properly joined under Rule 8(b), a district court should grant severance under Rule 14 only if there is a serious risk that a joint trial would prejudice a specific trial right of one of the defendants or prevent the jury from making a reliable judgment about guilt or innocence." <u>Zafiro v. United States</u>, 506 U.S. 534, 536 (1993).

Benito Zamora does not allege that there are <u>Bruton</u> problems with his sister's statements, because she has made none. Benito Zamora does not allege that his sister has an antagonistic defense. Instead, Benito Zamora speculates that his sister may possibly offer him exculpatory testimony under some non-existent grant of immunity, but only if her case is tried first. This speculation does not rise to the level of creating a serious risk that a joint trial would prejudice any trial rights of Benito Zamora or prevent the jury from making a reliable judgment about guilt or innocence. It is far from apparent that a joint trial would cause prejudice to either defendant. Benito Zamora has asserted he did not know about the woman in the compartment; there is no indication that Evelyn Zamora's trial strategy would in any way prevent him from having a fair trial.

## V

## **CONCLUSION**

For the above stated reasons, the United States respectfully requests that Defendant's motions be denied and it's reciprocal discovery motion be granted.

DATED: January 16, 2008

          Respectfully submitted,

          KAREN P. HEWITT
          United States Attorney

          /s/ **Christina M. McCall**

          CHRISTINA M. McCALL
          Assistant U.S. **Attorney**

## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | Criminal Case No. 07CR3407-IEG |
| Plaintiff, | ) | |
| v. | ) | CERTIFICATE OF SERVICE |
| (1) BENITO DE JESUS ZAMORA-ARIZAGA, | ) | |
| Defendant. | ) | |

**IT IS HEREBY CERTIFIED that:**

I, CHRISTINA M. McCALL, am a citizen of the United States and am at least eighteen years of age. My business address is 880 Front Street, Room 6293, San Diego, California 92101-8893.

I am not a party to the above-entitled action. I have caused service of **RESPONSE AND OPPOSITION** on the following parties by electronically filing the foregoing with the Clerk of the District Court using its ECF System, which electronically notifies them.

1. Sylvia Baiz
2. Kris Kraus

I hereby certify that I have caused to be mailed the foregoing, by the United States Postal Service, to the following non-ECF participants on this case:

None

the last known address, at which place there is delivery service of mail from the United States Postal Service.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on January 16, 2008

/s/ ***Christina M. McCall***
CHRISTINA M. McCALL