1 | KAREN P. HEWITT
United States Attorney
2 | CHRISTINA M. McCALL
Assistant U.S. Attorney
3 | California State Bar No. 234139
Federal Office Building
4 | 880 Front Street, Room 6293
San Diego, California 92101-8893
5 | Telephone No. (619) 557-6760

6 | Attorneys for Plaintiff
United States of America
7

8 | UNITED STATES DISTRICT COURT

9 | SOUTHERN DISTRICT OF CALIFORNIA

10 | UNITED STATES OF AMERICA,           )    Criminal Case No.  07CR3407-IEG
                                       )
11 |                                    )    UNITED STATES' MOTIONS IN LIMINE TO:
                                       )
12 |                                    )    (A)    PRECLUDE EVIDENCE OF
            Plaintiff,                  )           MATERIAL WITNESS'S PRIOR
13 |                                    )           ATTEMPTS TO ENTER;
      v.                               )    (B)    EXCLUDE SELF-SERVING HEARSAY;
14 |                                    )    (C)    ADMIT DEMEANOR EVIDENCE;
                                       )    (D)    LIMIT CHARACTER EVIDENCE;
15 |                                    )    (E)    PROHIBIT REFERENCE TO
EVELYN VERENICE ZAMORA-ARIZAGA,        )           PUNISHMENT, ETC.;
16 | BENITO DE JESUS ZAMORA-ARIZAGA,     )    (F)    EXCLUDE ALL WITNESSES EXCEPT
                                       )           CASE AGENTS;
17 |                                    )    (G)    EXCLUDE EXPERT TESTIMONY;
                                       )    (H)    COMPEL RECIPROCAL DISCOVERY.
18 |                                    )
                                       )
19 |        Defendants.                 )    Date:        April 28, 2008
                                       )    Time:        2:00 p.m.
20 |                                    )    Honorable:   Irma E. Gonzalez
                                       )
21 | _____)
                                       )
22 | _____)
                                       )
23 | _____)

24

25 |       Plaintiff, United States of America, by and through its counsel, Karen P. Hewitt, United States

26 | Attorney, and Christina M. McCall, Assistant United States Attorney, hereby files its Motions in Limine.

27 | These motions are based upon the files and records of the case together with the attached statement of

28 | facts and memorandum of points and authorities.

//

//

I

**STATEMENT OF THE CASE**

On December 19, 2007, a federal grand jury in the Southern District of California returned a two-count indictment against Defendant Evelyn Verenice Zamora-Arizaga ("Evelyn Zamora") and Defendant Benito De Jesus Emmanuel Zamora Arizaga ("Benito Zamora" or "Defendant"). The Indictment charges Evelyn Zamora and Benito Zamora with one count of bringing an illegal alien into the United States for financial gain, in violation of 8 U.S.C. § 1324(a)(2)(B)(ii), and one count of bringing in an illegal alien without presentation, in violation of 8 U.S.C. § 1324(a)(2)(B)(iii).

After arraigning Defendants on December 20, 2007, the Court set a motion hearing date for January 22, 2008. That motion hearing was continued to March 3, 2008. On March 3, this Court continued the motion to suppress and denied all the motions to dismiss. The Court set a motions in limine hearing and a suppression hearing for April 28, 2008 at 2:00 p.m.

II

**STATEMENT OF FACTS**

**A.    The Offense Conduct**

Both defendants entered the Calexico West Port of Entry on December 10, 2007. Evelyn Zamora was the driver of a red Nissan Quest van and Benito Zamora was the only visible passenger. Both Zamoras indicated that they had nothing to declare and said they were going to Calexico. The primary inspector began a physical examination of the car and quickly noticed that the driver's side panel felt solid. Evelyn Zamora said the van belonged to a relative. The inspector referred the Zamoras and the van to secondary inspection and requested a search using a detector dog.

In the secondary inspection area, Officer Morse asked Evelyn Zamora if she was bringing anything from Mexico; Evelyn Zamora denied bringing anything and handed a valid border crossing card. Benito Zamora also presented a valid border crossing card. After reading the referral slip from the primary officer which noted an unusually dense driver's side panel, Officer Morse tapped the area and confirmed that it felt solid.

At that time, Officer Morse asked Officer Randolph to approach with a detector dog. Officer Morse told the Zamoras to get out of the car and wait in front during the canine inspection. As soon as

1  the dog entered the van, both Zamoras turned their back to the vehicle. Shortly after the dog entered,

2  Officer Morse noticed that both Zamoras looked scared. Benito Zamora just stood still and began to

3  stare at Officer Morse. After the dog alerted, Officers Randolph and Morse went inside the van to

4  inspect the side wall. While inside, the officers saw what appeared to be a body. Officer Morse took

5  both Zamoras into the vehicle secondary office and returned to the van to assist in the removal of the

6  person. Eventually, after removing a seat and prying back the side panel, the officers freed Teresa

7  Jimenez-Martinez. Jimenez is a Mexican citizen with no legal permission to enter or remain in the

8  United States. The compartment and Jimenez's removal were photographed.

9  **B.      The Defendants' Statements**

10     At approximately 1:39 p.m., Customs and Border Protection ("CBP") Officer Jose Bolanos

11  advised Evelyn Zamora of her <u>Miranda</u> rights in Spanish. Evelyn Zamora stated that she understood her

12  rights and did not wish to make a statement. Officer Bolanos did not question Evelyn Zamora about the

13  offense.

14     At approximately 2:05 p.m., Officer Bolanos advised Benito Zamora of his <u>Miranda</u> rights in

15  Spanish. Benito Zamora acknowledged each of his rights, signed a written waiver, and agreed to speak

16  with agents. Benito Zamora, throughout his 30-minute interview, claimed that he did not know about

17  the person hidden in the Zamoras' vehicle, prior to arriving at the port of entry. Benito Zamora said that

18  the day of his arrest was his day off of work at a carwash in Mexicali. His sister, Evelyn Zamora, called

19  Benito to invite him to shop at the Wal-Mart in Calexico, even though there is a Wal-Mart near the port

20  of entry in Mexicali. Benito Zamora said that Evelyn picked him up around 8:30 a.m. on the morning

21  of his arrest. Benito Zamora said that he lives by the Calexico East port of entry. When Officer Bolanos

22  asked Benito why the Zamoras drove all the way to the Calexico West port of entry from his house on

23  the far east side of Mexicali, Benito said that he did not question his sister. Benito said they waited in

24  the vehicle inspection line for about a half hour before reaching the primary inspection booth.

25     Benito Zamora said that the van belongs to Evelyn Zamora's mother-in-law. Benito stated that

26  he did not know that there was a female passenger in the vehicle's hidden compartment and said that he

27  had seen her when she was brought out of the compartment by the officers. The officers questioned how

28  Benito knew that the person in the compartment was a woman, since he was removed from the

1  secondary inspection area before the material witness was visible.  Then, Benito Zamora said that he did

2  not see the female passenger and that he does not know why he said he had.  The agents informed Benito

3  Zamora that they did not believe his story and that continuing to tell lies causes problems.  Benito

4  Zamora started breathing heavily, put his head down, and said he did not want to continue with the

5  interview.  At that point, the interview stopped.

6  **D.     The Material Witness' Statements**

7        Lorenza Ines Ramirez Sanchez, the material witness, was interviewed in the Spanish language.

8  In her interview, Ramirez admitted that she was born in Mexico and remains a citizen of Mexico.

9  Ramirez  said that she possessed no legal documents to enter or remain in the United States. Ramirez

10  said she had attempted to use a counterfeit document to enter the Calexico West port of entry on

11  December 7, 2007 and was allowed to withdraw her application for admission.  Ramirez admitted that

12  she has been living illegally in the United States for 19 years, using the name of Teresa Jimenez

13  Martinez to conceal her true identity.  Ramirez said she went to Mexico to visit her sick mother.

14        Ramirez said she made smuggling arrangements herself with an unknown man who approached

15  her outside the port of entry in Mexicali.  This man instructed Ramirez to meet her at a location where

16  she was placed in the vehicle's compartment.  Ramirez planned to pay 3800 dollars to be smuggled to

17  Cathedral City.  Ramirez said that the man told her to remain quiet so that "they"--presumably the

18  officers at the port--would not discover her.  Ramirez estimated that she spent a total of one hour inside

19  the compartment.  Ramirez said she was able to hear the voice of a female and a male from inside the

20  compartment.  Ramirez said that she did not know if she would be able to escape the compartment

21  without assistance, in the event of an emergency.

22                                              **III**

23                        **UNITED STATES' MOTIONS IN LIMINE**

24  **A.     MOTION TO PRECLUDE EVIDENCE OF MATERIAL WITNESS'S PRIOR
         ATTEMPTS TO ENTER THE UNITED STATES**

25

26        Defendants may seek to introduce evidence regarding the material witness's prior attempts to

27  enter the United States illegally.  The witness's prior attempts to enter, if any, are irrelevant to her

28  testimony in this case.  The material witness's testimony is relevant to establishing her alienage and the

    financial arrangements made to be smuggled into the United States.

1    Defendants may seek to introduce testimony that the material witness had not encountered

2   Defendant in her previous attempts to cross the border to support the notion that Defendants are not

3   regular drivers for an alien smuggling organization. This evidence is irrelevant to the case at hand, in

4   which the United States must prove that Defendants brought into the United States an illegal alien for

5   financial gain and that Defendants brought into the United States an illegal alien without presenting the

6   alien to an immigration officer at a designated port of entry, having the intent to violate the immigration

7   laws on or about December 10, 2007.

8    Likewise, Defendants should be prohibited from eliciting prior attempts to enter in order to attack

9   the credibility of the material witness. Pursuant to Rule 403, the probative value of eliciting this type

10   of testimony is substantially outweighed by the danger of undue prejudice, waste of time, and the

11   needless presentation of cumulative evidence. By admitting that she is an alien without any legal right

12   to enter the United States, and testifying that she was paying money to be smuggled illegally into the

13   United States, the material witness will have disclosed to the jury the relevant facts that weigh upon her

14   credibility – that is, that she was trying to violate the immigration laws herself by arranging illegal

15   transportation into the United States. That she may have attempted to cross before does not further

16   impeach her testimony. Consequently, testimony regarding the material witness's prior attempts to enter

17   the United States, if any, should be excluded.

18   **B.    MOTION TO EXCLUDE SELF-SERVING HEARSAY**

19    The United States anticipates that Defendants may try to elicit potentially exculpatory statements

20   made by Defendants from witnesses for the government or the defense. Thus, the United States moves,

21   *in limine*, to prohibit defense counsel from eliciting self-serving hearsay from either government

22   witnesses or defense witnesses.

23    Defendants' out of court statements are inadmissible hearsay when offered by Defendants

24   through witnesses. Defendants cannot rely on Fed. R. Evid. 801(d)(2) because they are not the

25   proponents of the evidence, and the evidence is not being offered against them. Under Rule 801(d)(2),

26   a statement of a party is not hearsay only when it is being offered against the party, and not when it is

27   being offered on a declarant's behalf. Defendants cannot attempt to have "self-serving hearsay" brought

28

1  before the jury without the benefit of cross-examination.  See, e.g., United States v. Fernandez, 839 F.2d

2  639, 640 (9th Cir. 1988).

3       Nor can Defendants rely on Rule 801(d)(1)(B), which provides for an exception to the hearsay

4  rule for a statement offered to rebut a charge of recent fabrication, since such a statement is not

5  admissible unless Defendants have already testified and has been impeached.  United States v. Navarro-

6  Varelas, 541 F.2d 1331, 1334 (9th Cir. 1976), cert. denied, 429 U.S. 1045 (1977).

7       The only exception to the hearsay rule that could possibly permit a defendant to offer her own

8  out-of-court statements at trial would be Rule 803(3), which excludes from the definition of hearsay a

9  statement of the declarant's "then existing state of mind, emotion, sensation, or physical condition (such

10  as intent, plan, motive, design, mental feeling, pain and bodily health) but not including a statement of

11  memory or belief to prove the fact remembered or believed.  A person's belief may not be proved by

12  previous out-of-court statements."  See United States v. Cohen, 631 F.2d 522 (5th Cir. 1980) (emphasis

13  added).

14       The inadmissibility of Defendants' beliefs sought to be introduced on his behalf through other

15  witnesses is clearly prohibited by United States v. Emmert, 829 F.2d 805 (9th Cir. 1987).  In Emmert,

16  the Ninth Circuit affirmed District Judge Brewster's exclusion of testimony by a witness that the

17  defendant told the witness that the defendant was afraid of government agents.  The Court, citing Cohen

18  with approval, emphasized that if the reservation in the test of Rule 803(3) (that is, excluding evidence

19  of a statement of belief to prove the fact believed) is to have any effect, it must be understood to

20  narrowly limit those admissible statements to declarations of condition–"I'm scared"–and not

21  belief–"I'm scared because Galkin [the undercover agent] threatened me."

22  **C.    MOTION TO ADMIT DEMEANOR EVIDENCE**

23       The Customs and Border Protection officers in this case made observations during their

24  interaction with Defendants.  This evidence should be admitted because it is relevant and not overly

25  prejudicial.

26       1.    Demeanor Evidence is Admissible to Circumstantially Show Knowledge

27       Evidence regarding Defendants' demeanor and physical appearance is admissible as

28  circumstantial evidence helpful to the jury's determination of whether the Defendants knew an alien was

1    concealed in their vehicle. See Fed. R. Evid. 701; United States v. Romero-Avila, 210 F.3d 1017, 1023

2    (9th Cir. 2000) (identifying defendant's nervousness at the border as part of the "strong independent

3    evidence of defendant's guilt"); United States v. Hursh, 217 F3d. 761, 767-68 (9th Cir. 2000)

4    (nervousness during border questioning at primary inspection and later nervousness while car was being

5    inspected at secondary was additional evidence of knowledge); United States v. Klimavicius-Viloria,

6    144 F. 3d 1249, 1263-1265 (9th Cir. 1998) (the crew's demeanor, such as becoming less cooperative

7    when the Coast Guard decided to search a tank where bales of cocaine were later found, was relevant

8    to show knowing participation); United States v. Lui, 941 F.2d 844, 848, 848 n.2 (9th Cir. 1991)

9    (defendant's actions both before and after discovery of drugs, such as acting disinterested and not

10   helping in the search, and, when the inspector found the drugs, stepping away without attempting to see

11   to what the inspector was referring, supported a finding that the defendant was guilty); United States v.

12   Barbosa, 906 F.2d 1366, 1368 (9th Cir. 1990) (defendant's apparent nervousness and anxiety during

13   inspection was valid circumstantial evidence of knowledge of concealed narcotics).

14        Furthermore, the inference of knowledge is strengthened by inconsistencies and improbabilities

15   in an individual's story. United States v. Haro-Portillo, 531 F.2d 962, 963 (9th Cir. 1976); see also

16   United States v. Romero-Avila, 210 F.3d 1017, 1022 (9th Cir. 2000) (holding that the defendant's

17   nervousness while his vehicle was inspected, as well as his lies to border inspectors, comprised "strong

18   independent evidence" of guilt in marijuana importation case). Here, Defendants both turned their back

19   to the vehicle when the detector dog climbed inside, and Benito Zamora-Arizaga identified a woman in

20   his post-arrest interview as the smuggled alien, despite the fact that he had been removed from the

21   vehicle before the material witness.

22        2.    Nervousness Testimony Does Not Violate Rules 701 and 704(b)

23        A lay witness may state his opinion that a person appeared nervous. See United States v.

24   Mastberg, 503 F.2d 465, 470 (9th Cir. 1974). Rule 701 allows a lay witness to testify to opinions or

25   inferences (a) rationally based on the perception of the witness, (b) helpful to a clear understanding of

26   the witness' testimony or the determination of a fact in issue, and (c) not based on specialized

27   knowledge.

28

07CR3407-IEG

**D.    THE COURT SHOULD LIMIT CHARACTER EVIDENCE**

The United States anticipates that Defendants may attempt to introduce testimony regarding their specific acts of prior good conduct. Testimony as to multiple instances of good conduct violates Federal Rule of Evidence 405(a). See United States v. Barry, 814 F.2d 1400, 1403 (9th Cir. 1987).

Federal Rule of Evidence 404(a)(1) further states that evidence of a person's character is not admissible for the purpose of proving a person's actions on a particular occasion except "evidence of a pertinent trait of character offered by an accused or by the prosecution to rebut the same."

A character witness cannot offer specific instances of conduct by the defendant which would tend to support the reputation of the defendant. See United States v. Hedgecorth, 873 F.2d 1307 (9th Cir. 1989) ("While a defendant may show a character for lawfulness through opinion or reputation testimony, evidence of specific acts is generally inadmissible.") (citations omitted); United States v. Giese, 597 F.2d 1170, 1190 (9th Cir. 1979) (character witnesses must restrict their direct testimony to appraisals of defendant's reputation).

In interpreting the permissible scope of character evidence under Rule 404(a), the Ninth Circuit has ruled that presentation of witnesses to testify about a defendant's character for "law abidingness" and honesty is permissible. See United States v. Diaz, 961 F.2d 1417, 1419 (9th Cir. 1992). Asking a defense witness about the defendant's propensity to engage in a specific type of criminal activity, however, is not allowed under Rule 404(a). See id. at 1419-20 (impermissible to ask character witness about defendant's propensity to engage in large scale drug dealing).

Thus, the United States hereby moves *in limine* to prohibit Defendants from introducing testimony from any character witness about (a) a specific instance of Defendants' conduct, and (b) Defendants' propensity to be involved in smuggling.

**E.    MOTION TO EXCLUDE EVIDENCE AND ARGUMENT REFERRING TO DEFENDANT'S AGE, FINANCES, EDUCATION AND POTENTIAL PUNISHMENT**

"Evidence which is not relevant is not admissible," (Fed. R. Evid. 402), and the jury should "not be influenced by any personal likes or dislikes, opinions, prejudices, or sympathy." Ninth Cir. Model Jury Instructions, § 3.1 (2003). Here, it is anticipated that Defendants may attempt to introduce evidence about their family, work history, or other personal characteristics. Such evidence is not only irrelevant and unfairly prejudicial, but also a blatant play for sympathy and jury nullification.

07CR3407-IEG

1   Defense counsel may wish to inform the jury of the potential penalties Defendants face if

2   convicted and, in particular, the three-year mandatory minimum sentence.  Information about penalty

3   and punishment draws the attention of the jury away from their chief function as the sole judges of the

4   facts, opens the door to compromise verdicts, and confuses the issues to be decided.  See United States

5   v. Olano, 62 F.3d 1180, 1202 (9th Cir. 1995); United States v. Frank, 956 F.2d 872, 879 (9th Cir. 1991).

6   In federal court, the jury is not permitted to consider punishment in deciding whether the United States

7   has proved its case against the defendant beyond a reasonable doubt.  9th Cir. Crim. Jury Instr. §7.4

8   (2003).  Any such argument or reference would be an improper attempt to have the jury unduly

9   influenced by sympathy for Defendants and prejudice against the United States.

10  The United States, therefore, respectfully requests this Court to preclude any mention of possible

11  penalty and/or felony designation at any point during the trial.

## F.    MOTION TO EXCLUDE WITNESSES DURING TRIAL WITH THE EXCEPTION OF THE UNITED STATES' CASE AGENTS

13  Under Federal Rule of Evidence 615(3), "a person whose presence is shown by a party to be

14  essential to the presentation of the party's cause" should not be ordered excluded from the court during

15  trial.  The case agent involved in this case is considered by the United States to be an integral part of the

16  trial team.  As such, the case agent's presence at trial is necessary to the United States.

17  The United States requests that Defendant's testifying witnesses be excluded during trial pursuant

18  to Rule 615.

## G.    MOTION TO EXCLUDE EXPERT TESTIMONY

20  The United States, pursuant to Federal Rules of Criminal Procedure 12.2 and 16(b), requested

21  that Defendants permit the United States to inspect and copy or photograph any results or reports of

22  physical or mental examinations and of scientific tests or experiments made in connection with the

23  particular case, or copies thereof, within the possession or control of Defendants, which Defendants

24  intend to introduce as evidence in their case-in-chief at trial or which were prepared by a witness whom

25  Defendants intend to call at trial.  Moreover, the United States requested that Defendants disclose written

26  summaries of testimony that Defendants intend to use under Rules 702, 703, or 705 of the Federal Rules

27  of Evidence as evidence at trial.  The summaries were to describe the witness's opinions, the bases and

28  reasons for those opinions, and the witness's qualifications.  Defendants have provided neither notice

of any expert witness, nor any reports by expert witnesses.  Accordingly, Defendants should not be permitted to introduce any expert testimony.

If the Court determines that Defendants may introduce expert testimony, the United States requests a hearing to determine this expert's qualifications and relevance of the expert's testimony pursuant to Federal Rule of Evidence 702 and <u>Kumho Tire Co. v. Carmichael</u>, 526 U.S. 137, 150 (1999). See <u>United States v. Rincon</u>, 11 F.3d 922 (9th Cir. 1993) (affirming the district court's decision to not admit the defendant's proffered expert testimony because there had been no showing that the proposed testimony related to an area that was recognized as a science or that the proposed testimony would assist the jury in understanding the case); <u>see also</u>  <u>United States v. Hankey</u>, 203 F.3d 1160, 1167 (9th Cir.), <u>cert.</u> <u>denied</u>, 530 U.S. 1268 (2000).

## H.    RENEWED MOTION FOR RECIPROCAL DISCOVERY

As of the date of the preparation of these motions, Defendant has produced no reciprocal discovery that Defendant intends to introduce at trial.  The United States requests that Defendant comply with Rule 16(b) of the Federal Rules of Criminal Procedure, as well as Rule 26.2 which requires the production of prior statements of <u>all</u> witnesses, except for those of Defendant. Defendant has not provided the United States with any documents, photographs, or statements. Accordingly, the United States intends to object at trial and ask this Court to suppress any evidence at trial which has not been provided to the United States.

**IV**

**CONCLUSION**

For the foregoing reasons, the United States respectfully moves this Court to grant its motions.

DATED:  April 15, 2008

Respectfully Submitted,

KAREN P. HEWITT
United States Attorney

/s/ *Christina M. McCall*
CHRISTINA M. McCALL
Assistant U.S. Attorney

07CR3407-IEG

1

2

3                              UNITED STATES DISTRICT COURT

4                             SOUTHERN DISTRICT OF CALIFORNIA

5   UNITED STATES OF AMERICA,            )              Case No. 07CR3407-IEG
                                         )
6                   Plaintiff,           )
                                         )
7            v.                          )
                                         )              CERTIFICATE OF SERVICE
8   EVELYN VERENICE ZAMORA-ARIZAGA,      )
    BENITO DE JESUS ZAMORA-ARIZAGA,)
9                                        )
                                         )
10                  Defendant.           )
                                         )

11  IT IS HEREBY CERTIFIED THAT:

12          I, CHRISTINA McCALL, am a citizen of the United States and am at least eighteen years of

13  age.  My business address is 880 Front Street, Room 6293, San Diego, California 92101-8893.

14          I have caused service of the **GOVERNMENT'S MOTIONS IN LIMINE** on the following

15  parties by electronically filing the foregoing with the Clerk of the District Court using its ECF

16  System, which electronically notifies them.

17          1.      **Kris Kraus**

18          2.      **Sylvia Baiz**

19          I declare under penalty of perjury that the foregoing is true and correct.

20          Executed on April 15, 2008

21                                          /s/ *Christina M. McCall*
                                            CHRISTINA M. McCALL
22                                          Assistant U.S. Attorney

23

24

25

26

27

28